# Exhibit D



deVere USA, Inc.
6th Floor, 767 Third Avenue
New York, NY 10017
United States of America

## DATED THIS 5th OF AUGUST 2013

## BETWEEN

## DEVERE USA INC.

## AND

## BRADLEY HAMILTON

# EMPLOYMENT AGREEMENT

**THIS AGREEMENT** is made this **5th day of August 2013**

**BETWEEN:**

1.   **deVere USA, Inc.**, whose offices are at **6th Floor, 767 Third Avenue, New York, NY 10017United States of America** (the "**Company**"); and

2.   **Mr. Bradley Hamilton** of **1412 Madison Avenue, New York, NY 10029, United States of America** (the "**Employee**").

**RECITALS:**

A.   The Company primarily engages in the business of providing international financial consulting services to expatriate clients and investors, both in the United States, and around the world (the "Business").

B.   The Employee is an experienced investment advisor. In reliance upon the Employee's skill, knowledge and experience, the Company wishes to engage the Employee to provide services to the Company and its clients, and the Employee has agreed to accept this engagement on the terms set forth in this Agreement.

**IT IS AGREED** that the preceding Recitals are true, and it is further agreed as follows:

**1.   Employment; Employee's Duties and Obligations**

1.1   The Employee is hereby retained by the Company, as an employee, in the position of ***Area Manager.*** In that position, the Employee will report directly to ***the Senior Manager.*** The Employee shall devote all of Employee's business time, attention, and energies to work on behalf of the Company, and shall not, except to the extent permitted by the Company in writing, be engaged in any other business or professional activities, whether or not such business or professional activities are pursued for gain, profit or other pecuniary advantage. It is agreed, however, that the Employee may invest Employee's savings or Employee's other assets in such form or manner as will not require any services on Employee's part.

1.2   The Employee will provide to the Company the services indicated in Schedule 1 to this Agreement (the "Services"), on the terms and conditions set out in this Agreement.

1.3    The Employee:

a.    Agrees, in providing the Services, to exercise all reasonable skill and care and to complete all assignments in a timely, proficient, and professional manner;

b.    Shall comply with all reasonable instructions and requirements of the Company and shall at all times act in a lawful and proper manner;

c.    At all times shall comply with all policies of the Company and maintain strict adherence to the Compliance Program implement by the Company;

d.    Shall use reasonable endeavours to promote the interests of the Company;

e.    Shall pay all monies from clients directly to financial institutions, or to the Company itself, as required by the Company's policies, rules, and regulations;

f.    Shall disclose in writing to the Company any possible conflict between:

i.    The interests of the Company (and/or any client of the Company); and

ii.    The Employee's interests and/or those of a family member, relative, friend, or associate of any officer or employee of the Employee, or those of any business or organization in which the Employee has an interest;

g.    Shall always act with good faith and loyalty towards the Company;

h.    Shall act honestly and in the best interests of the Company in the provision of the Services;

i.    Shall comply with the Employee's statutory obligations relating to licensure;

j.    Shall use the Employee's best efforts to avoid acts or omissions which would be likely to injure the Company, including but not limited to any form of competition against the Company;

k.    Shall notify the Company on the occurrence of any of the matters set out in Schedule 2: and

l.    Shall cooperate with the Company in relation to any of the matters set out in Schedule 3.

1.4     The Employee shall not without the express prior approval in writing of the Company:

    a.    Incur any expenditure in the name of or on behalf of the Company;

    b.    Do or say anything in the name of or on behalf of the Company, including but not limited to execution of any contracts on behalf of the Company, or the pledging of the Company's credit in any way;

    c.    Place any advertisements (including on the internet) on behalf of the Company, hire any individual as an employee or independent contractor, or publish any articles (whether financial or otherwise);

    d.    Allow any client monies to be made payable to the Employee or the Company; or

    e.    Receive any direct or indirect personal remuneration, payment or benefit of any kind from a client or prospective client for services of any kind.

1.5     The Employee will not make any press, radio or television statement or submit for publication or publish any letter, article or statement relating directly or indirectly to the business or affairs of the Company or any Affiliate of the Company without first obtaining the consent in writing of the Company. The term "<u>Affiliate</u>," as used in this Agreement, means any Person which, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with the Company. "<u>Person</u>" means any natural person, corporation, limited liability company, unincorporated organization, partnership, association, joint stock company, joint venture, trust or any other entity.

1.6     If the Employee is unable to provide the Services due to illness or injury the Employee shall advise the Company of that fact as soon as reasonably practicable.

## 2.     <u>Term</u>

2.1     This Agreement shall be effective on the Commencement Date specified in Schedule 1, and will continue for a period of three (3) years thereafter (the Agreement's "<u>Initial Term</u>"), unless the Agreement is terminated first pursuant to Section 8. If not previously terminated, at the end of the Initial Term the Agreement shall be automatically renewed for an additional term of one (1) year, and it shall similarly be renewed on future one-year anniversary dates (collectively, "<u>Renewal Terms</u>"), unless terminated earlier pursuant to Section 8. The entire term of the Agreement (comprised of that part of the Initial Term, and any Renewal Terms, prior to termination) shall be referred to in this Agreement as the "<u>Term</u>."

**3.**   **Salary and Benefits**

3.1   The Employee shall be paid an annual salary of $40,000 per year for rendering Services required by this Agreement. This salary shall be paid pro rata, over the course of the year, at the Company's regular payroll intervals. Taxes shall be withheld from the Employee's salary as required by law. The Employee's salary may be changed by the Company from time to time, as a result of salary reviews or contract negotiations, or otherwise.

    3.1.1   The Employee shall be provided with the standard benefits enjoyed by all Company employees ("Standard Benefits"). Standard Benefits means vacation or paid time off as provided by Company policies, paid holidays enjoyed by all Company employees, workers compensation insurance, and other fringe benefits of employment provided by Company policies.

    3.1.2   The Company shall reimburse the Employee, or the Employee shall be entitled to charge to the Company, all reasonable and necessary business expenses incurred in the course of employment by the Employee, where such business expenses are expressly authorized by the policies established by the Company.

    3.1.3   **Salary Adjustment**: After the first 3 months from the date of this Agreement and subject to the satisfactory performance of the Employee, the Manager will consult with the Employee and review the salary. The adjustment of the salary will be at the sole discretion of the Manager.

3.2   The Company may at any time (including for the avoidance of doubt following termination of this Agreement) set off any amounts owed to the Company by the Employee against any sums owing by the Company to the Employee so as to reduce any debt owed to the Company under this Agreement or otherwise.

**4.**   **No Privacy as to Emails; Records**

4.1   In order to monitor regulatory compliance, and for other business reasons, the Company may monitor any electronic email made in relation to the provision of the Services by the Employee. For this purpose the Employee shall within two days of the Commencement Date notify the Employee's intranet email password(s) to Mr Andoni Yturralde at: andoni.yturralde@devere-group.com.

4.2   The Employee shall make and keep complete records, including communications by email, of all of the services provided and expenses thereby incurred under this Agreement. These records shall be the property of the Company, although the Company may allow the

Employee to use and retain such records. The Employee shall return all such records to the Company in the event of termination of employment.

**5.     Indemnity Obligations**

5.1     The Employee agrees to indemnify, defend, and hold harmless the Company, any Affiliate, and their respective directors, officers, employees and agents, against any damages or liabilities, including reasonable attorney's fees, incurred as a result of Services by the Employee, or any other act, omission or default by the Employee, where the Employee's conduct, acts or omissions are found to be malicious or in reckless disregard to the rights, safety, or property of others.

5.2     The Company shall indemnify, defend, and hold harmless the Employee, to the fullest extent permitted by applicable law, from and against any damages or liabilities, including reasonable attorney's fees, that the Employee may individually sustain by reason of serving as an employee, director, or officer of the Company. Provided, however, that the Employee shall not be indemnified for damages or liabilities to the extent the Employee receives the proceeds of insurance covering the same, or is otherwise reimbursed through some other source, nor will the Employee be indemnified for damages or liabilities caused by the Employee's own acts or omissions found to be malicious or in reckless disregard of the rights, safety or property of others. Separate counsel, reasonably acceptable to the Employee, shall be provided the Employee where joint representation would or might create a conflict of interest. The Employee agrees to cooperate with the Company's counsel in any legal proceeding, or in connection with any claim, where this obligation is or may be applicable.

**6.     Confidential Information**

6.1     In order to protect the Confidential Information and the goodwill and interests of the Company and without prejudice to any other duty implied by law, whether during or following the termination of this Agreement, the Employee will:

  i.     Not use for the Employee's own purposes or for the purpose of any unauthorised third party any Confidential Information;

  ii.    Not disclose or cause to be disclosed and will use the Employee's best endeavors to prevent the publication or disclosure of any Confidential Information; and

  iii.   Shall not reproduce any Confidential Information or any part thereof in any format or media form except as required to do so by the Company in the provision of the Services.

6.2 "<u>Confidential Information</u>" means all information whether recorded or not (and, if recorded, in whatever form, in whatever media and by whomever recorded) which is a trade secret, including all information and materials that are trade secrets within the meaning of applicable law, or other confidential, proprietary or private information which is not generally known or easily accessible by the public (either as an individual item of information or as part of a body of knowledge), in any way relating to or concerning the business, finances, dealings, transactions or affairs of the Company or any of its Affiliates, or of any third party with whom or which the Company or any Affiliate has dealt and in respect of whom or which the Company or any Affiliate is bound by an obligation (whether express or implied) of confidence.

This includes information relating to the Company's business practices and processes, its designs, its knowhow, its trade secrets, and also information relating to its clients, investors, employees, agents, consultants, suppliers, pricing or trading arrangements, terms of business, research, products and/or services (or development or marketing relating to such products and/or services), sales or intellectual property, and specifically including past, current and planned research and development information, lists of actual or potential clients, current and anticipated client requirements, price lists, market studies and business plans, historical financial statements of the Company, the Company's financial projections and budgets, historical and projected revenue and expense information, and any other Company information that is marked "confidential."

6.3 Upon request by the Company, or automatically upon the termination or expiration of this Agreement, the Employee shall promptly and irrevocably delete any information belonging to the Company or any Affiliate from any computer system in the Employee's possession or under the Employee's control having first ensured that the Company has a copy of any such information.

6.4 The Employee shall notify the Company immediately upon becoming aware of any unauthorised disclosure or copying, use or loss of any Confidential Information.

6.5 The covenants of confidentiality set forth above will continue for a period of five (5) years after the date of termination of the Employee's employment; provided, however, that with respect to any Confidential Information that is considered a trade secret under any applicable law, the covenants of confidentiality shall continue for as long as such information remains a trade secret under applicable law.

6.6 The confidentiality commitments in this Section 6 will not apply to the extent that the Employee can demonstrate either: (i) that the same information is currently publicly available or becomes publicly available and that such public availability did not result from the disclosure of such information by Employee either (A) by improper means of the

Employee or from acts or omissions of another Person that Employee knows, or should have reason to know, misappropriated or improperly disclosed such information or utilized improper means to acquire it or acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use, or (B) by accident or mistake; or (ii) that such Confidential Information is legally required by law to be disclosed, in which event such Confidential Information may be disclosed only after giving the Company notice of such legally required disclosure so that the Company (or any of its Affiliates) may seek a protective order or other similar or appropriate relief.

The Employee shall also undertake in good faith to have such disclosed information treated confidentially consistent with the terms of this Agreement.  Without limited the preceding covenants in this Section 6, any trade secret within the Confidential Information will also be entitled to all of the protections and benefits under any applicable law.  If a court of competent jurisdiction determines that any information which the Company (or any Affiliate of the Company) deems to be a trade secret is not a trade secret, then such information will be considered confidential or proprietary information for purposes of this Agreement.

7. **Copyright**

7.1    The Employee acknowledges and agrees that the scope of Employee's work for the Company may include the preparation of written materials that are subject to protection under the Copyright Act ("Works"). The Employee agrees that regardless of whether such Works are authored by the Employee during normal working hours, off of the Company's premises, outside the United States, or utilizing the Employee's or a third party's equipment, all Works authored, in whole or in part, by the Employee while employed by the Company, which relate in any way to the Employee's Company assignments, Company projects, or the Company's clients served by Employee, shall be "Works Made for Hire" such that all right, title, and interest worldwide in and to such Works shall vest solely, exclusively, and irrevocably in the Company.

The Employee agrees that any Works Made for Hire for the Company may not be used by the Employee for personal purposes.  Accordingly, the original and copies of any Works Made for Hire may not be included within the Employee's personal portfolio, or used on a personal web site by the Employee, without the Company's written consent, signed by an authorized Company representative, which may be withheld by the Company in its sole discretion.  Works Made for Hire are the property of the Company, not the Employee.  Works shall include, but not be limited to, the following:

i.      Schedules, reports, analyses, text, memoranda, correspondence, documents, and art work; and

     ii.    Computer programs, program and code listings, design work, web applications, print-outs, and material recorded in a permanent form.

7.2    The Employee hereby irrevocably and unconditionally waives in favor of the Company any and all moral rights conferred by statute for any design or copyright work in which copyright is vested in the Company.

## 8.    **Termination**

8.1    This Agreement shall be automatically terminated in the event of the death of the Employee.

8.2    Either party may terminate this Agreement, and the Employee's employment by the Company, at any time, by giving the other party one (1) week's advance notice of termination in writing.  The Company may terminate this without any notice in the event there is Cause to discharge the Employee. "Cause" means an act or omission by the Employee which comprises serious misconduct in connection with work, or material breach of this Agreement by the Employee. If the Company elects to terminate this Agreement and the Employee's employment, in the absence of Cause, the Company may pay the Employee one week's salary in lieu of notice, and it may also exercise this right to pay salary in lieu of notice if the Employee resigns employment.

8.3    Any provisions of this Agreement containing rights or obligations which, by their terms, extend after termination of the Agreement, shall survive termination of this Agreement, specifically including, but not limited to, the Company's rights under the restrictive covenants set forth in Section 9, the confidentiality commitments set forth in Section 6, the indemnity commitments set forth in Section 5, the Employee's right to salary and compensation as provided by Section 3, and the arbitration commitments referenced in Section 15 and set forth in the separate Arbitration Agreement appended as Schedule 4 to this Agreement. Sections 11 – 19 of this Agreement shall survive termination as well, to the extent any other provisions of this Agreement survive termination.

8.4    On the termination of this Agreement, the Employee will:

    i.    Provide full co-operation with a formal handover to the Company or to any person nominated by the Company of any outstanding matters relating to the Services; and

    ii.    hand over to the Company any books, documents, papers, materials, computer discs and software, and any copies thereof (whether in human readable or machine readable form) and other property of the Company which may then be in the Employee's possession or under the Employee's control, and will indicate in writing, if required by the Company, that the Employee has complied with this commitment.

## 9.    **Restrictive covenants**

9.1   In this Section 9, the following terms will have the meanings given to them below:

**"Applicable Products"** means products or services which are the same or materially similar to the products or services sold or supplied by the Company or any of its Affiliates, within the Business, during the Twelve Month Period;

**"Key Person"** means any person who is currently employed by the Company, or engaged by the Company as an independent contractor, or who has a similar business relationship with one of the Company's Affiliates, and who has been provided extensive training by the Company or its Affiliates, either in the classroom or on the job;

**"Market Area"** means the State of New York and any other State in which the Employee has relationships with Restricted Clients and/or Restricted Prospective Clients;

**"Restricted Client"** means any person who or which at any time during the Twelve Month Period is or was a customer or client of the Company or any Affiliate for the sale or supply of the Applicable Products;

**"Restricted Prospective Client"** means any person who or which at any time during the Twelve Month Period was negotiating with the Company or any Affiliate with a view to dealing with the Company or an Affiliate for the sale or supply of the Applicable Products;

**"Restricted Period"** means a period of twelve months immediately following the date of termination of the Employee's employment with the Company, although no termination of Employee's employment with the Company shall be deemed to have occurred, such as to trigger commencement of the Restricted Period, where there is a corporate transfer of the Employee, such as a transfer of the Employee from the Company to one of its Affiliates; and

**"Twelve Month Period"** means the period of twelve months immediately before the date of termination of the Employee's employment with the Company.

9.2   The Employee acknowledges that the restrictions contained in this Section 9 are reasonable and appropriate for the Employee, who will have strong relationships with clients and other employees of the Company, and who will become very knowledgeable with regard to the Company's Confidential Information. The Employee also acknowledges that the Company engages in the Business throughout its Market Area, that it is reasonable and appropriate for the following restrictive covenants to have the duration provided by this Agreement, and that the Employee is willing to be bound by the restrictive covenants as a condition to being hired as an employee of the Company.

9.3    The Employee will not, during the Restricted Period, directly or indirectly, alone or together with a third party and whether as principal, shareholder, director, employee, agent, consultant, partner or otherwise, without the prior written consent of the Company:

    i.    compete (or attempt to compete) with the Company or any Affiliate by dealing or contracting with, or accepting business from, any Restricted Client or any Restricted Prospective Client in relation to the sale or supply of any Applicable Products; or

    ii.    compete (or attempt to compete) with the Company or any Affiliate by canvassing, soliciting or approaching any Restricted Client or any Restricted Prospective Client either personally or through an intermediary for the sale or supply of Applicable Products; or

    iii.    Solicit, induce or entice away from the Company or any Affiliate a Key Person either personally or through an intermediary whether or not such Key Person would commit any breach of his or her contract of employment or engagement by leaving the service of the Company or any Affiliate.

9.4    Whilst the restrictions and defined terms in this Section are regarded by the parties as fair and reasonable, it is hereby declared that each of such restrictions and defined terms is intended to be separate and severable. If any restriction or defined term is held to be unreasonably wide but would be valid if part of the wording were deleted, that restriction or defined term will apply with so much of the wording deleted as may be necessary to make it valid. In addition, the covenants in this Section 9 (and in each portion thereof) are and will be construed as separate and independent agreements. If the Employee is in violation of any of those restrictive covenants, then the time period applicable to such violated covenant shall be automatically extended for the period of such violation.

9.5    The Employee agrees that damages may be a wholly inadequate remedy in the event of any breach of any of the provisions in this Section 9, or Section 6 of this Agreement, and accordingly agrees that in such circumstances, the Company may be entitled to seek specific enforcement of these Sections (by injunction or otherwise) on such terms as any Court of competent jurisdiction may deem just and proper. The Company will not, by seeking or obtaining any particular relief, be deemed to have precluded itself from obtaining any other relief to which it may be entitled.

9.6    The terms of this Agreement are not confidential, and the Company (or any Affiliate of the Company) may disclose the provisions of this Agreement, without any liability whatsoever, to any Person, including, without limitation, one that is engaged in a business relationship with the Employee, and may indicate that it is believed that the Employee is in violation of this Agreement.

**10.**   **Resignation of Directorship(s)**

10.1   If the Employee is serving as a director of the Company, on the termination of this Agreement, the Employee will at the request of the Company, and without claim for compensation, immediately resign the Employee's office as a director of the Company and any other directorships held by the Employee in respect of any Affiliates. The Employee hereby grants the Company an irrevocable power of attorney with authority to take all steps necessary to effect such resignations.

**11.**   **Assignment**

11.1   The Employee will not assign or otherwise transfer the Employee's rights or obligations under this Agreement except with the written consent of the Company. The Company (and any Affiliate of the Company) may assign or delegate any or all of its rights and obligations under this Agreement to any Person. The Employee agrees that the covenants of this Agreement shall be enforceable against the Employee by the assigns and successors of the Company (and any Affiliate of the Company).

**12.**   **Waiver**

12.1   No failure or delay on the part of either party to exercise any right or remedy under this Agreement shall be construed or operate as a waiver of that right or remedy nor shall any single or partial exercise of any right or remedy be regarded as such a waiver.

12.2   The rights and remedies provided in this Agreement are cumulative save where expressed otherwise in this Agreement and are not exclusive of any rights or remedies provided by law save where expressed otherwise.

**13.**   **Further Assurance**

13.1   At any time after the date of this Agreement either party shall, at the request and cost of the other party, execute or procure the execution of such documents and do or procure the doing of such acts and things as the other party may reasonably require for the purpose of giving to the other party the full benefit of all the provisions of this Agreement.

**14.  Set-off and Counterclaim**

14.1  The Company may set off against any sums due to the Employee whether under this Agreement or otherwise any lawful set-off or counterclaim to which the Company may at any time be entitled.

**15.  Arbitration**

15.1  The Company and the Employee agree that all disputes between them shall be resolved by arbitration, in accordance with the separate Arbitration Agreement attached as Schedule 4 to this Agreement, except to the extent that the Arbitration Agreement provides otherwise.

**16.  Entire Agreement**

16.1  This Agreement, and the Arbitration Agreement attached as Schedule 4 to this Agreement, contain the entire understanding of the parties relating to the subject matter contained herein and supersede all prior written or oral communications and all contemporaneous oral agreements relating to the subject matter hereof. This Agreement cannot be modified or amended except in writing signed by the party against which or whom enforcement is sought.

**17.  Counterparts**

17.1  This Agreement may be executed in any number of counterparts, which shall together constitute one agreement. Any party may enter into this Agreement by signing any such counterpart.

**18.  Governing Law; Selection of Jurisdiction for Court Litigation**

18.1  This Agreement will be governed by and construed in accordance with the laws of the State of New York, without giving effect to any conflict-of-laws rule or principle that might result in the application of the laws of another jurisdiction.

18.2  To the extent permitted by their Arbitration Agreement, the parties agree that all court litigation between them, arising out of or relating to this Agreement, or arising out of or relating to the Arbitration Agreement, shall be heard and determined by the United States District Court for the Southern District of New York, or, if litigation in state court is appropriate, by a state court sitting in New York County, New York, or by any appellate courts which review decisions of those courts. The parties expressly submit to the jurisdiction of those courts for adjudication of all such disputes, and agree not to bring any such action or proceeding in any other court.
Both parties waive any defense of inconvenient forum as to the maintenance of any action or proceeding brought pursuant to this section of the Agreement in those courts, and waive

any bond, surety, or other security that might be required of the other party with respect to any aspect of such action, to the extent permitted by law. Provided, however, that either party may bring a proceeding in a different court, jurisdiction or forum to obtain collection of any judgment, or to obtain enforcement of any injunction or order, entered against the other party.

19. **<u>Notices</u>**

19.1   All notices that are required or may be given pursuant to the terms of this Agreement shall be in writing and shall be sufficient in all respects if delivered personally or by a recognized courier or overnight delivery service or by registered or certified mail, postage prepaid, to the Employee at the Employee's home address, and to the Company at its office address in Florida (or to the attention of such other address as either party shall provide to the other party by notice in accordance with this Section). Any such notice under this Section shall be deemed to have been given and received on the day it is personally delivered or delivered by a recognized courier or overnight delivery service or, if mailed, on the fifth day after it is mailed.

*[Signature page follows]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date first written above.

EXECUTED by DEVERE USA, INC.:

_____
Senior Manager
BEN ALDASON

EXECUTED by **Bradley Hamilton**

_____
Employee

in the presence of:

in the presence of:

Witness _M. Doherty_

MATT DONOLLY.

Witness _____

ERIC DERANAH.

15

## Schedule 1

Commencement Date:          **5th August 2013**

Services:

a.   The Employee shall provide services as an ***Area Manager*** assigned to the New York, New York office of the Company, and shall perform such other duties, not inconsistent with the Employee's status and position, that may be assigned by the Company's management.

b.   The Employee shall meet any targets or performance requirements as required by the Company from time to time.

**Schedule 2**

Further to Section 1.3 (k), the following are matters of which the Employee must notify the Company:

1. Any matters which may have a significant impact on the reputation of the Company (including in relation to the unauthorised disclosure of Confidential Information or the violation of covenants restricting competition);

2. Any matter what could affect the Company's or any Affiliate's ability to provide adequate services and which could result in serious detriment to a client and any breach of the Compliance Program;

3. Any matter that could result in serious financial consequences to the Company or to any other firm

4. A breach of any statutory requirements or the bringing of a prosecution (civil or criminal) or a conviction being entered against the Employee in any jurisdiction;

5. Any disciplinary proceedings brought against the Employee by any regulatory agency or the commencement of a government investigation, law enforcement investigation, or criminal prosecution against the Employee;

6. Any matter associated with the insolvency or bankruptcy of the Employee; and

7. Any material inaccuracies, omissions or changes to which the Employee is aware in information previously supplied to the Company in connection with the Employee's employment or licensure.

**Schedule 3**

Further to Section 1.3 (l), the following are matters to which the Employee undertakes to cooperate with the Company:

1. Making sure that the Employee is readily available to attend meetings as reasonably required in the provision of the Services;

2. Providing all information to the Company that is relevant and material to the performance of the Services and to ensure strict compliance with the Compliance Program at all times;

3. Attending such courses, training sessions, examination, seminars, lectures and meetings as are reasonably required in the provision of the Services;

4. Ensuring that the Employee has reached the required level of competency as set down in the Company's training and competency and compliance manuals;

5. Providing to the Company specified documents, files, tapes, computer data or other material in the Employee's possession when required to do so;

6. Answering all questions truthfully, fully and promptly which are put to the Employee by the Company;

7. Compliance with the requirements associated with the relevant financial regulatory regime;

8. Ensuring that all documentation, research and sales records are completed to the satisfaction of the Compliance Department maintained by one or more of the Company's Affiliates;

9. Ensuring that all Company and confidential property be held and filed at the Company's business address; and

10. Returning all property and information gathered together with the Company's stationary, letterheads, fact finds and client files to the Company.

**Schedule 4 – New York Office Arbitration Agreement**

## ARBITRATION AGREEMENT

This Arbitration Agreement is made this 5th August 2013, by and between **deVere USA, Inc.**, (the "Company") and **Bradley Hamilton** an individual (the "Employee").

### Recitals

A.   The Company has offered the Employee employment, and the Employee wishes to accept this offer.

B.   The parties prefer that disputes between them be resolved by arbitration and after full and thorough consideration, the parties have agreed to arbitrate any disputes as provided by this Agreement.

### Terms

NOW THEREFORE, in consideration of the mutual promises set forth in this Agreement, and in consideration of the Company's employment of the Employee, the parties agree as follows:

1.   **Arbitration.** The Company and the Employee agree that it would be in their mutual best interest if most claims between them are resolved through arbitration, recognizing that arbitration provides the benefit of a speedy, impartial, and binding dispute-resolution process. However, they also agree that other claims are of such a nature that they must be resolved through litigation. This Section 1 shall identify both the claims subject to arbitration, and the claims excluded from this arbitration provision, and shall set forth the parties' agreements as to applicable arbitration procedures.

   a.   Claims Subject to Arbitration. The only claims that are arbitrable are those that, in the absence of this provision, would have been justiciable under applicable state or federal law.  The claims subject to arbitration include, but are not limited to:  claims by either party for compensation or monies due from the other party, such as claims for employment compensation; any claims by the Employee under the Fair Labor Standards Act, or under state wage-hour laws, including any claims for overtime compensation; any discrimination, retaliation, whistle-blower, or harassment claims alleged by the Employee; any claims for benefits by the Employee (except claims under an employee benefit plan that specifies that its claim procedure shall culminate in an arbitration procedure different from this one); and statutory claims by either party.

Accordingly, except as otherwise provided by this Agreement, both the Employee and the Company agree that neither of them shall initiate or prosecute any lawsuit or administrative action (other than administrative charges filed with state or federal agencies) in any way asserting claims under this Agreement which are subject to arbitration.

b.    <u>Claims Not Subject to Arbitration</u>. Any claim by either party seeking only injunctive relief, and attorney's fees and costs relating to the claim, shall not be decided by arbitration, but shall be litigated in court (where a claimant is seeking both injunctive relief and damages, the claim for injunctive relief may be pursued in court, and claims seeking damages may be pursued in arbitration proceedings). Claims for unemployment compensation and workers compensation shall also not be decided by arbitration. In addition, nothing in this Agreement is intended to prohibit the Employee from filing any charge or complaint with administrative agencies, nor is this Agreement applicable to any claims where a governmental entity has initiated legal proceedings against the Company on the Employee's behalf.

c.    <u>Time Limits for Commencing Arbitration and Required Notice of All Claims</u>. The aggrieved party must give written notice of any claim to the other party no later than the expiration of the statute of limitations that the law prescribes for the claim. Otherwise, the claim shall be void and deemed waived.

d.    <u>Arbitration Procedures</u>.

   1.    *Commencing the Arbitration*. The arbitration shall be held under the auspices of a sponsoring organization, either the American Arbitration Association ("AAA") or Judicial Arbitration & Mediation Services ("J-A-M-S"), with the designation of the sponsoring organization to be made by the party initiating arbitration proceedings as to the claim. Except as provided by this Agreement, the arbitration shall be conducted in accordance with the sponsoring organization's then-current employment arbitration rules/procedures.

   The arbitration will be commenced by a written notice filed by the claimant which shall identify and describe the nature of the claims asserted, the facts upon which the claims are based, and the relief or remedy sought. In the event of a claim by the Employee, the Employee shall be responsible for payment of that portion of the sponsoring agency's filing fee equivalent to the current filing fee for commencing a lawsuit in the applicable New York trial court, and the Company shall pay the remainder of that filing fee. The Company shall also pay all other administrative fees charged by the sponsoring organization, as well as all fees of the arbitrator, and shall pay the entire filing fee as well in the event

that it initiates the claim; provided, the arbitrator shall have authority, as a remedy, to impose payment of all arbitration fees and costs on the non-prevailing party.

2. *Selection of the Arbitrator.* The Employee and the Company agree that claims under this Agreement shall be decided by only one arbitrator, as opposed to a panel of arbitrators. That arbitrator shall be selected as follows. The sponsoring organization shall give each party a list of eleven (11) arbitrators drawn from its panel of employment dispute arbitrators.  Each potential arbitrator selected by the sponsoring organization should be either a retired judge, or an attorney licensed to practice law.

Each party shall strike all names on the list it deems unacceptable. If only one common name remains on the lists of all parties, that individual shall be designated as the arbitrator. If more than one common name remains on the lists of all parties, the parties shall strike names alternately from the list of common names until only one name remains, with the party who filed the arbitration proceeding striking first. If there are no common names on the list, then the parties shall strike names alternately from all names on the list, with the party who filed the arbitration proceeding striking first, until only one name remains. That person shall be designated as the arbitrator.

The parties shall act promptly in selecting the arbitrator, so that the selection process shall be complete within two weeks of the postmark date on the letter providing the list of potential arbitrators from the sponsoring organization.  In the event of non-compliance with these procedures the sponsoring agency shall resolve the matter and shall have discretion to pick an arbitrator if necessary.

3. *Rules applicable to the Arbitration.* The parties may be represented by counsel, retained at their own expense, during the arbitration proceedings (however, if any party prevails on a claim which affords the prevailing party attorney's fees, the arbitrator may award reasonable attorney's fees to the prevailing party, applying the same standards a court would apply under the law applicable to the claim). The arbitration shall be held in New York, New York, at the Company's offices, or at another location selected by the Company, and provided at Company expense. The arbitrator shall apply substantive law (and the law of remedies, if applicable) of the State of New York to the extent that State law is applicable to the claims, except as provided otherwise by this Agreement.

The arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement,

including but not limited to any claim that all or any part of this Agreement is void or voidable. The arbitration shall be final and binding upon the parties, except as provided by law. Because of the expedited nature of arbitration proceedings under this Agreement, no class claims or collective claims can be brought by the parties under this Agreement, and to the extent any right may exist in the future to bring such a claim, that right is waived or released by the parties through execution of this Agreement.

4.   *Discovery in connection with the Arbitration.* Each party shall have the right to take the deposition of one person and any expert witness designated by another party. Each party also shall have the right to make requests for the production of documents to any party and to subpoena documents from third parties, to the extent permitted by law.

Requests for additional discovery may be made to the arbitrator selected pursuant to this Agreement. The arbitrator shall grant an order for such requested additional discovery that the arbitrator finds the party requires to adequately arbitrate a claim, taking into account the parties' mutual desire to have a fast, cost-effective dispute resolution mechanism.

5.   *Pre-Hearing Disputes and Motions.* The arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the arbitrator deems advisable. The arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

6.   *The Arbitration Proceeding.* Either party may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings. Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented. Either party, upon request at the close of hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the arbitrator. The arbitrator shall render an award and written opinion no later than 30 days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later.
The opinion shall include the factual and legal basis for the award. Either party shall have the right, within 20 days of issuance of the arbitrator's opinion, to file with the arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have 20 days from the date of the motion to respond.

The arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which shall then be final and conclusive upon the parties. THE EMPLOYEE UNDERSTANDS THAT THERE IS NO RIGHT TO A JURY TRIAL IN ARBITRATION PROCEEDINGS.

2.  **Governing Law.** This Agreement shall be deemed made in the State of New York, and the rights, remedies, obligations and duties of the parties under this Agreement shall be governed by, construed in accordance with, and enforced under, the laws of the State of New York. Notwithstanding the foregoing, the parties acknowledge and recognize that the Employee's work, and the Company's business, both involve interstate commerce. Accordingly, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement.

3.  **Submission to Jurisdiction.** Any judicial proceedings relating to arbitrations conducted pursuant to this Agreement shall be heard and determined by the United States District Court for the Southern District of New York, or, if litigation in state court is appropriate, by a state court sitting in New York County, New York, or by any appellate courts which review decisions of those courts. The parties expressly submit to the jurisdiction of those courts, and agree not to bring any such action or proceeding in any other court.

    Both parties waive any defense of inconvenient forum as to the maintenance of any action or proceeding brought pursuant to this section of the Agreement in those courts, and waive any bond, surety, or other security that might be required of the other party with respect to any aspect of such action, to the extent permitted by law. Provided, however, that this forum selection provision will not prevent either party from bringing a proceeding in a different court, jurisdiction or forum to obtain collection of any judgment, or to obtain enforcement of any injunction or order, entered against the other party.

4.  **Amendment; Waiver.** This Agreement may not be amended or modified except by a writing signed by the Company and by the Employee. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provisions, whether or not similar, and no waiver of any other provision shall constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

5.  **Entire Agreement.** This Agreement supersedes any prior oral or written agreements or contracts between the parties relating to the arbitration of disputes between them.

6.  **Successors and Assigns.** Neither this Agreement nor any of the rights or obligations of Employee arising under this Agreement may be assigned by Employee without the

Company's prior written consent. The Company may assign its rights arising under this Agreement without the consent of the Employee.

7. **Notices.** All notices and other communications under this Agreement must be in writing, and must be given by certified mail, or by overnight courier, or delivered by hand, to the party to whom the communication is to be given. Notices to the Employee may be directed to Employee's home address; notices to the Company may be directed to its business address in Miami, Florida.

8. **Counterparts.** This Agreement may be signed in counterparts, each of which shall be deemed an original, and all of which, taken together, shall be deemed one and the same document.

**WHEREFORE**, the parties, through their signatures below, agree to the terms and conditions of this Agreement.

By:_____        By:_____
**Bradley Hamilton**                deVere USA, Inc.

Dated: 20/8/13                      Position:_____

                                    Dated:_____

24